**Jeffrey BRADLEY, individually and on behalf of all other similarly situated individuals, Plaintiff,**

**v.**

**Frank HALL, Defendant.**

**Civ. No. 93–1050–JO.**

United States District Court,
D. Oregon.

July 21, 1994.

Spencer M. Neal, Ginsburg & Neal, Portland, OR, for Plaintiff.

Jan Peter Londahl, Department of Justice, Administration, Salem, OR, for Defendant.

## OPINION AND ORDER

ROBERT E. JONES, District Judge:

Plaintiff inmate brought this § 1983 claim against the Director of the Oregon Department of Corrections challenging the constitutionality of a regulation that punishes an inmate for use of disrespectful language. Plaintiff claims that when the regulation is applied to language within an inmate grievance, it violates his First Amendment rights to free speech and petition for redress of grievance. Both parties have moved for summary judgment concerning the constitutionality of the regulation. For the reasons set forth below, defendant's Motion for Summary Judgment (# 29–1) is denied, and plain-

tiff's Cross–Motion for Summary Judgment (# 39) is granted.

## I. BACKGROUND

On June 12, 1993, plaintiff filed a grievance with the Oregon Department of Corrections alleging misconduct by a guard. Plaintiff's grievance included the following: "Her actions shows [sic] her misuse of her authority and her psychological disorder needs attention. Then you wonder why things happen like that guard getting beat down? ... I suggest you talk to this woman and have her act professionally instead of like a child." Plaintiff's Second Amended Complaint, Attachment 1. Plaintiff was subsequently found guilty of violating OAR 291–105–015(2)(g), one of three disrespect regulations, which provides: "An inmate commits Disrespect III when he/she directs hostile, sexual, abusive or threatening language or gestures, verbal or written, towards or about another person." As a result, plaintiff was punished with a 14–day loss of privileges, suspended on the condition of 30 days clear conduct. Plaintiff's Motion for Preliminary Injunction, Exhibit A, Affidavit of Jeffrey Bradley, at ¶ 11.

Plaintiff claims that application of the disrespect rule to inmate grievances is violative of his First Amendment rights to free speech and petition for redress of grievance. Both parties have moved for summary judgment.

## II. LEGAL ANALYSIS

Summary judgment is proper if the moving party establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Here, the parties do not dispute the facts, and the only question is whether the rule is constitutional when applied to language contained in a grievance.

## A. IS THE REGULATION CONSTITUTIONAL UNDER *TURNER V. SAFLEY*?

The proper test for determining whether the prison regulation at issue is constitutional is set forth in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987),[1] which "applies to all circumstances in which the needs of the prison administration implicate constitutional rights." *Washington v. Harper*, 494 U.S. 210, 224, 110 S.Ct. 1028, 1038, 108 L.Ed.2d 178 (1990).

The *Turner* Court began its analysis of the constitutional rights afforded prisoners by stressing that the courts should give deference to regulations promulgated by prison officials:

> Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and the separation of powers concerns counsel a policy of judicial restraint. *Where a state penal system is involved, federal courts have,* as we indicated in *Martinez, additional reason to accord deference to the appropriate prison authorities.*

*Turner*, 482 U.S. at 84–85, 107 S.Ct. at 2259 (citing *Martinez*, 416 U.S. at 405, 94 S.Ct. at 1807) (emphasis added).

With this judicial deference in mind, the Court held that "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89, 107 S.Ct. at 2261. The Court then set forth a four-part test to determine whether a reasonable relation exists, including: (1) whether there is a rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether the prison inmates have alternative means of exercising the right at issue; (3) what impact accommodation of the asserted constitutional right will

---

1. Plaintiff's argument that this court should apply the stricter standard of *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1973), is unavailing. *Martinez* was decided on the basis that the rule at issue impinged upon the constitutional rights of non-inmates; plaintiff's attempt to argue here that the regulation adversely affects the prison administrators' right to receive hostile or threatening grievances is not persuasive.

have on guards and other inmates; and (4) whether ready alternatives to the regulation under attack exist (absence of such alternatives being evidence of the rule's reasonableness).

■ On its face, the rule appears to be reasonably related to legitimate penological interests, as required by *Turner*. Prison administrators face the difficult task of controlling and rehabilitating large numbers of unruly and largely antisocial inmates. The administrators have a legitimate interest in seeing that the prison runs smoothly and effectively, and continued smooth operation is largely dependent upon inmate recognition of the guards' authority. Mandating prisoner respect for the guards through the enforcement of a disrespect rule such as the one at issue enables the guards to retain control. "While it is unrealistic to expect prisoners to revere their prison guards, open hostility must be avoided. Such hostility threatens prison security. For this reason, a regulation prohibiting prisoners from verbally abusing their jailers is essential." *Robichaux v. Tanner*, 1992 WL 345372, *2 (E.D.La.).

However, even though the disrespect regulation on its face satisfies the *Turner* test, I cannot find a rational connection between the regulation and the prison administration's interest when it is applied to language contained in a grievance.

Defendant argues that the disrespect rule is essential to effective prison operation because unfettered disrespect by inmates towards guards would inevitably lead to loss of control of the prison. While this may be a valid concern in face-to-face situations, I fail to see how an inmate's written complaint, directed to a guard's superior, could provoke the type of volatile reaction that might threaten prison security. The fact that the guards who are the subjects of the grievances eventually read them does not alter my analysis; the explosive potential present in a face-to-face altercation remains absent.

Granted, another function of prison officials is to rehabilitate inmates in preparation for their eventual release. The disrespect regulation can therefore be viewed as an attempt to mandate respectful behavior in an effort to improve prisoners' basic social skills. However, this rehabilitative mission cannot override the need for inmates to be able to freely address their complaints in the grievance procedure. Similarly, allowing inmates this one avenue of unrestricted speech would not seriously undercut the prison's rehabilitative mission as a whole.

For these reasons, despite the Supreme Court's history of judicial deference in such matters, I cannot find that there is a rational connection between the disrespect rule and the penological interest of the prison when the rule is applied to language contained within a grievance. Although the regulation may be constitutional on its face, it fails the *Turner* test when applied to grievances. The question remains, however, whether language contained in a grievance is or should be entitled to special protection.

## B. ARE INMATE GRIEVANCES ENTITLED TO SPECIAL PROTECTION?

Plaintiff asserts that his right to petition for redress of grievances has been chilled because the broad definitional latitude of the words "hostile" and "abusive" renders almost anything negative he may write about a guard capable of being construed as violative of the disrespect rule. Further, he asserts that the prison administration's ability to sanction him for language within a grievance effectually amounts to retaliation for the filing of the grievance itself.

It is well-settled that an inmate cannot be punished for the act of filing a grievance. *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir.1989) (filing of disciplinary charge actionable under section 1983 if done in retaliation for having filed a grievance); *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir.1986) (actions taken in retaliation for filing administrative grievance violate inmate's First Amendment rights and right of access to courts). The prison administrative rules recognize this, but draw a distinction between the content of the grievance and the grievance itself: "Inmates/offenders will not be subject to reprisal for filing a grievance or for contacting or seeking review of a complaint outside the Department of Correc-

tions; however, content of the grievance may subject an inmate to the rules of prohibited conduct." OAR 291–109–015(e).

■ Punishing an inmate for the content of his grievance rather than for the act of filing the grievance is a distinction without a difference—both result in the chilling of free speech.

In a case involving false statements contained in an inmate grievance, the Eighth Circuit similarly rejected bifurcating the language within a grievance from the grievance itself:

> Prison officials cannot properly bring a disciplinary action against a prisoner for filing a grievance that is determined by those officials to be without merit anymore than they can properly bring disciplinary action against a prisoner for filing a lawsuit that is judicially determined to be without merit. That the Constitution does not obligate the state to establish a grievance procedure is, we believe, of no consequence here, since what is at stake is a prisoner's right of access to an existing grievance procedure without fear of being subjected to retaliatory disciplinary action. As a purely practical matter, we observe that if such disciplinary actions were allowed, the purpose of the grievance procedure—to provide an administrative forum for the airing of administrative complaints—would be defeated.

*Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir.1989).

The purpose of a grievance is to allow an inmate to air his complaints to the prison administration. Any language used by an inmate to complain of guard misconduct will necessarily appear disrespectful, particularly in light of the broad discretion granted the administration in interpreting whether language is "hostile" or "abusive."

Although speech contained in an inmate grievance is not clearly protected under the First Amendment, neither has it been clearly held to be unprotected. Instead, the courts have relied upon Supreme Court holdings in cases involving employee grievances. *See, e.g. Curry v. Hall,* 839 F.Supp. 1437, 1440 (D.Or.1993). The Supreme Court has not addressed the issue of First Amendment rights in a prisoner grievance, but in the context of employee grievances has held that "there is no sound basis for granting greater constitutional protection to statements made in a petition ... than other First Amendment expressions." *McDonald v. Smith,* 472 U.S. 479, 485, 105 S.Ct. 2787, 2788, 86 L.Ed.2d 384 (1985) (statements contained in petition to President not entitled to absolute immunity). Further, the Court has also held that speech within grievances made by public employees is entitled to protection only if the employee's speech addresses a matter of public concern. *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983).

A distinction can be drawn, however, between these cases involving grievances made by citizens who possess uncircumscribed First Amendment rights, and those made by prisoners, whose First Amendment rights have been curtailed. Unincarcerated citizens possess broad First Amendment rights, but are afforded absolute immunity only in certain circumstances. *Connick, supra.* Prisoners, on the other hand, find their First Amendment rights restricted, and do not "enjoy the full panoply of constitutional rights to express themselves." *Ustrak v. Fairman,* 781 F.2d 573, 580 (7th Cir.1986).

■ The prison administration cannot promulgate regulations which impair a prisoner's right of access to the courts. *Ex parte Hull,* 312 U.S. 546, 549, 61 S.Ct. 640, 641–42, 85 L.Ed. 1034 (1941); *Johnson v. Avery,* 393 U.S. 483, 485, 89 S.Ct. 747, 748–49, 21 L.Ed.2d 718 (1969). The situation should be analogous within the context of prison grievances. *See Carothers v. Follette,* 314 F.Supp. 1014, 1022 (S.D.N.Y.1970) (imposition or threat of punishment based on prisoner's complaints to court concerning prison conditions chills prisoner's First Amendment right to voice complaints and amounts to form of deterrent censorship). If prison administrators intend to deal honestly and effectively with prisoner complaints of guard misconduct, inmates must be allowed the opportunity to file grievances without fear of being sanctioned for using language which could be construed as hostile or threatening. Not

only will this foster open communication between the inmates and the prison administration, it will also encourage prisoners to use the grievance system to remedy their complaints, rather than causing them to look to the already congested courts for relief.

## III. CONCLUSION

Although Disrespect Rule OAR 291–105–015(2)(g) is constitutional under *Turner* in general situations, it does not have a rational connection to the interests of the prison administration when it is applied to language contained in an inmate grievance. Prisoners should be allowed to file grievances within the prison system without fear of being sanctioned for an unhappy choice of words, and their speech within a grievance should be protected, except to the extent that it includes criminal threats. Further, inmates should be encouraged to use the prison grievance system rather than resort to the courts for redress of their grievances. For these reasons, defendant is enjoined from enforcing OAR 291–105–015(2)(g), or any other disrespect rules, against language contained within this inmate's grievance.

Plaintiff's Cross–Motion for Summary Judgment (# 39) is granted; Defendant's Motion for Summary Judgment (# 29–1) is denied; and plaintiff's request for an injunction is granted.

Pursuant to 42 U.S.C. § 1988, this court may award plaintiff reasonable attorney's fees incurred in pursuit of his claim. The amount of the fee award, however, is left to the court's discretion. Class status having been denied by Order dated November 30, 1993, plaintiff is therefore directed to submit to this court an application for recovery of legal fees incurred on behalf of this plaintiff only.